PETER LEV
BUSINESS MANAGEMENT LLC



DEFENDANT'S
EXHIBIT
1
4-20-15

June 10, 2014

**Mark Bruh, Esq.**
**Law Offices of Robert L. Geltzer**
**1556 Third Avenue**
**New York, NY  10128**

**Re: Former Starr Clients – Alleged Outstanding Invoices**

Dear Mark,

As per our conversation last week, I am providing some further documentation and narrative with respect to the alleged outstanding balances that are being asserted on behalf of some of the clients I currently represent.

I have enclosed various copies of checks which evidence timely payments having been made on account and thus not properly reflected on outstanding balances presented.  Where a copy of a prior check wasn't available (The U.S. Government might have some of those files in their possession), and given the limited ability to have acquired old files at the time of Mr. Starr's arrest, I have provided where possible, a copy of a ledger, a copy of tax workpapers in my possession, and copies of emails between myself and the Receiver (Kevin Wallace of Troutman & Sanders) which might help clear up some of the open issues on behalf of my clients.

Please see the attached documents provided as follows:

1. **Paul Guilfoyle (Citypoint Inc.)** – A copy of a City National Bank cancelled check #1390 for $ 1,890 as payment in full of his outstanding bill to Starr.  Citypoint Inc. is the 100% owned loan out corporation for Mr. Guilfoyle and would have been the payment source for all monies due for the accounting services rendered.
2. **Terry Ellis** – A copy of ledger of the books of Mr. Ellis which evidences payments made to Starr and Company for his outstanding balances for services rendered.  Mr. Ellis was and continues to be a prompt payer and it is very evident that his open invoices were settled prior to him becoming a client of mine (last payment of

$639.50 in January of 2010). Please note that bank statements are not available on behalf of this client. The ledger provided is from my tax workpaper file going back to 2010.

3. **The Lucky Pierre Show Biz Co. Inc.** – While cancelled checks are not readily available for this client, I have provided a copy of the check register and the bank statement for the same period in question. I have also provided a copy of a tax workpaper file for the fiscal year 7/1/09 – 6/30/10 which shows a professional fee of $1500 during that timeframe. The client used Washington Mutual as their banking relationship which was ultimately absorbed by Chase Manhattan Bank. Unfortunately the banking records and copies of cancelled checks are not available and were left behind after my departure. This client has always paid and continues to pay his bills timely, and it is incomprehensible that his open balance would have remained for all those consecutive quarters that are being asserted as open.

4. **Harriet Lane** – A copy of a cancelled check and attached invoice (with Ms. Lane's notation of payment) from 2009. Ms. Lane is a timely payer of her open invoices and once again it is incomprehensible that she would have left open balances from 2005 and 2008 as she continued to use Starr and Company for her tax preparation. Any cancelled checks would have resided with the tax files for those years that were unfortunately left behind and not transferred to my office in 2010. It should be noted that her tax return was a simple return and continues to be a simple return with a few 1099's relating to interest and dividends.

5. **Kenneth and Nancy Lane** – When I contacted Mr. Lane about the assertion that there were open invoices, he pointed out that he always settled his annual tax return bill with Starr in a timely manner. Mr. Lane's return consists of a W-2 and some 1099's and the annual billing approximates $1000 or less given the nature of the work. He was disturbed to find that there were two successive months of billing by Starr (both in 2010) for a return that was among the more simple returns prepared at Starr. It should be further noted that those bills were never sent to his home. Any copies of older cancelled checks would have been in storage and remained at Starr and Company after my departure.

6. **Erika Steinberger** – Dr. Steinberger has been bed ridden for at least a half dozen years and in fact, I have had to take care of some old matters that Starr and Company neglected to handle on her behalf. Once again, you are talking about a return that involves social security income and a couple of 1099's. This was a long term client of Starr (thirty years) who would have settled her open bills rather timely. The billing in April of 2010 is also suspect (for the 2008 year) as it was two

years after the fact and close to the Starr and Company demise. In fact, my office had to prepare prior year returns as they were neglected by Starr.

7. **Adam and Martha Gopnik** – My client is trying to locate a cancelled check as well as hunting down this invoice. I believe it is another case of an invoice that was never sent out to the client. All their returns were timely filed. It does not make sense that the billing is for a 2007 return, two years later.

8. **Frances Hayward** – When Ms. Hayward became a client, her billing was based on net assets that Starr and Company invested on her behalf. She proceeded over the ensuing years (about 4-5 years) to spend all her money on a vanity personal film project to the point that by 2009-2010 she had little or nothing left. It is apparent from the quarterly billing, that Roseanne Ragano the Controller at Starr never adjusted the bill downward and in fact Ms. Hayward was left with tax liens of approximately $300,000 which were settled by my office (copies enclosed) after she hired my office to deal with her Federal and NYS tax problems, problems that Starr and Company ignored. The proceeds to pay off the tax liens came from the sale of her only remaining asset, a coop apartment in NYC. At the present time, Ms. Hayward is unable to pay her Medicare bills and utility bills, let alone paying my small fee for well over the past year and a half.

9. **Jeff & Caryn Zucker** – I have provided email correspondence with Kevin Wallace from Troutman and Sanders whose firm as you know were the appointed Receivers after Mr. Starr's arrest. The original bill received by Mr. Zucker was subsequently adjusted and payment in full was made by Mr. Zucker of this adjusted amount (reflecting only a half month of service for May 2010) and this payment should be reflected somewhere on the books of Starr. That payment was made sometime around August 2010 based on the back and forth of the emails that I presented. I would have provided a cancelled check, but Mr. Zucker was using Citibank as his bank at that time. He no longer is a customer of Citibank private banking and the cancelled check is unavailable to be produced at this time. You will see Kevin Wallace's narrative that the payment by Mr. Zucker would take care of any remaining open issue with respect to a balance due Starr and Company.

I hope that the documentation that I have provided as well as the narrative provided, will allow for the resolution of most if not all of the open issues concerning this matter. I would like to provide one final note and comment. As an employee of Starr & Company for 27 years, and having served as one of the managing directors for many of those years (and had my final paycheck bounce as well as my 401K funds ripped off by Mr. Starr and unreimbursed business expenses not paid), I was certainly aware of the sloppiness of the bookkeeping performed by the Starr Controller (Roseanne Ragano) as well as the billing errors that came out of her office. It is entirely possible that deposits were directed to wrong Starr related accounts to shore up his cash flow needs at any given time. It is my opinion that given what Mr. Starr was engaging in and was ultimately convicted of with respect to the clients that were handled at Starr and Company, the books and records of Starr were artificially enhanced to support a more robust balance sheet for receivables when it came to his ability to secure bank loans that he entered into. It would have not been in his best interest to properly write off or reflect collections on those receivables to achieve what he obviously needed to continue to run Starr and Company in those final months leading up to his arrest and demise of Starr and Company.

I look forward to hearing from you and achieving resolution on behalf of the clients presented in this letter.

Very truly yours,

*[signature]*

Peter M. Lev, E.A.